# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

———————————

№ 13-CV-5861 (JFB) (ARL)

———————————

75-07 FOOD CORP., LOREEN FOOD CORP., KAMAL CORP., CORO FOOD CORP., ZIAD FOOD CORP., 89-02 FOOD CORP., 130-10 FOOD CORP., AND NADINE FOOD CORP. D/B/A/ TRADE FAIR SUPERMARKETS,

Petitioners,

VERSUS

TRUSTEES OF UNITED FOOD AND COMMERCIAL WORKERS LOCAL 342 HEALTH CARE FUND, UNITED FOOD AND COMMERCIAL WORKERS LOCAL 342 SAFETY, EDUCATION, CULTURAL AND ACTIVITIES FUND, UNITED FOOD AND COMMERCIAL WORKERS LOCAL 342 LEGAL FUND, AND UNITED FOOD AND COMMERCIAL WORKERS LOCAL 342 SAVINGS & 401(K) PLAN,

Respondents.

———————————

**MEMORANDUM AND ORDER**
February 24, 2014

———————————

JOSEPH F. BIANCO, District Judge:

Petitioners 75-07 Food Corp., Loreen Food Corp., Kamal Corp., Coro Food Corp., Ziad Food Corp., 89-02 Food Corp., 130-10 Food Corp., and Nadine Food Corp. d/b/a Trade Fair Supermarkets (collectively, "Trade Fair" or "petitioners") filed an action in New York State Supreme Court seeking a stay of the arbitration that respondents Trustees of United Food and Commercial Workers Local 342 Health Care Fund ("Health Care Fund"), United Food and Commercial Workers Local 342 Safety, Education, Cultural and Activities Fund ("Safety-Educational-Cultural Fund"), United Food and Commercial Workers Local

342 Legal Fund ("Legal Fund"), and United Food and Commercial Workers Local 342 Savings & 401(k) Plan ("Annuity Fund") (collectively, the "Union Funds" or "respondents") requested to adjudicate a dispute over fringe benefit contributions that Trade Fair has allegedly failed to make to the Union Funds. On October 23, 2013, the New York State Supreme Court temporarily stayed the arbitration pending resolution of Trade Fair's petition to stay arbitration. The Union Funds removed this case to federal court on October 25, 2013.

Presently before the Court is the Union Funds' motion to dismiss the complaint, to vacate the stay ordered by the New York

1

State Supreme Court, and to compel arbitration. For the reasons that follow, the Court concludes that this action should be stayed, and the parties should proceed to arbitration. Resolution of the present dispute concerns the circumstances under which parties to an expired collective bargaining agreement may be compelled to arbitrate a post-expiration dispute pursuant to an arbitration provision in that agreement. Specifically, Trade Fair and the Union Funds raise the following two issues concerning the scope of their agreement to arbitrate: (1) which of several arbitration clauses in their collective bargaining agreement covers disputes over delinquent fringe benefit contributions, generally, and (2) whether the governing arbitration clause applies to their dispute over missed contributions occurring in 2013, given that the collective bargaining agreement expired in 2012. As to the first issue, the Court interprets the various arbitration clauses according to their plain meaning and determines that the arbitration provision in the Union Funds' "Procedures for Collection of Delinquent Contributions"—incorporated by reference in the collective bargaining agreement—covers disputes over delinquent contributions. On the second issue, the Court concludes that this arbitration clause applies specifically to the present, underlying dispute over allegedly delinquent contributions in 2013. In reaching this outcome, the Court applies the test set forth by the Supreme Court in *Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190 (1991), to determine whether the Union Funds had a right to fringe benefit contributions from Trade Fair in 2013, which arose under the collective bargaining agreement, even though the collective bargaining agreement expired in 2012. Under *Litton*, a post-expiration grievance arises under the collective bargaining agreement (1) "where it involves facts and occurrences that arose before expiration"; (2) "where an

action taken after expiration infringes a right that accrued or vested under the agreement"; or (3) "where, under normal principles of contract interpretation, the disputed contractual right survives expiration of the remainder of the agreement." *Id.* at 205–06. Here, the Court applies normal principles of contract interpretation and concludes that the Union Funds' right to fringe benefit contributions from Trade Fair survives expiration of the remainder of the collective bargaining agreement. Specifically, a memorandum of agreement, which modified the collective bargaining agreement and extended it until 2012, references Trade Fair's contributions to the Union Funds in 2013. The Court discerns from the plain meaning of these provisions a clear intent to extend the Union Funds' right to such contributions beyond expiration of the remainder of the collective bargaining agreement. Accordingly, the Court concludes that the Union Funds' underlying grievance is arbitrable.

I. BACKGROUND

A. Facts

Trade Fair is in the business of operating supermarkets. (Pearl Aff. ¶ 3.) On April 5, 2004, Trade Fair and United Food and Commercial Workers Local 342 (the "Union")—the Union representing Trade Fair employees—entered into a collective bargaining agreement that lasted from April 5, 2004 to November 1, 2008 (the "2004 CBA"). (*See* Lauletti Aff. Ex. C, 2004 CBA.) Pursuant to the 2004 CBA, Trade Fair agreed to make certain fringe benefit contributions to the Union Funds for the benefit of Trade Fair's employees. (*Id.* at 9–12.) Trade Fair also agreed to be bound by Union Funds' Declarations of Trust, along with their implementing documents and procedures,

2

including the provisions for the collection of contributions. (*See id.*)

The 2004 CBA itself contains several different arbitration clauses. First, Article 22 of the 2004 CBA contains a broad arbitration clause covering disputes "between the Union or its members and [Trade Fair] as to the interpretation, application, or enforcement of any of the provisions of this Agreement, except differences which arise involving contributions to the [Union Funds]." (*Id.* at 14.) This arbitration clause provides that a "single arbitrator shall be selected on a rotating basis from a qualified panel jointly designated by the Employer and the Union. . . . Arbitrators selected from the panel shall be eligible to hear all grievances arising out of the interpretation, application, or enforcement of any of the provisions of this Agreement." (*Id.*) Second, Schedule B of the 2004 CBA is an old collective bargaining agreement between Trade Fair and the Union covering the period from October 23, 1999 to October 25, 2003 (the "1999 CBA"). (*See id.* at 27). The 2004 CBA adopts the provisions of the 1999 CBA "for all employees covered by the [1999 CBA]," whom the 2004 CBA identified as only seven Trade Fair employees. (*See id.*) Article 23 of the 1999 CBA contains a similar arbitration clause to that in Article 22 of the 2004 CBA; it covers all disputes "as to the interpretation, application or enforcement of any of the provisions of this Agreement, except differences which arise involving contributions to the [Union Funds]." (*Id.* at 51–52.) However, in addition, in a letter dated October 23, 1999 that is attached to the 1999 CBA, Trade Fair and the Union agreed "to add the following provisions to Article 23 of the Collective Bargaining Agreement between us, dated October 23, 1999." (*Id.* at

66.) Those provisions state, in relevant part, that

> [a]ny dispute or controversy arising out of contributions to the [Union Funds], which the parties are unable to adjust, shall be submitted to John Kennedy, Impartial Arbitrator, or his successor chosen by the parties, for his determination and award. His award shall be final and binding and subject to enforcement in any court of competent jurisdiction in the State of New York.

(*Id.*)

By Memorandum of Agreement dated August 6, 2009 (the "MOA"), Trade Fair and the Union agreed "that all terms and conditions of the April 5, 2004 through November 1, 2008 Collective Bargaining Agreement [would] remain in effect through and including November 1, 2012, except for the following modifications." (Lauletti Aff. Ex. D, MOA at 1.) Among those modifications, Trade Fair agreed to make increased monthly contributions to the Union Funds on behalf of Trade Fair employees. (*See id.* at 2–4.) Under the MOA, the amount of the monthly contribution was set to increase once per year. (*See id.*) With respect to the Annuity Fund, the Safety-Educational-Cultural Fund, and the Legal Fund, the last increase was set to occur on January 1, 2013—two months after the 2004 CBA's expiration. (*See id.* at 3–4.) For instance, Trade Fair agreed to make the following monthly contributions to the Annuity Fund

3

for each full-time employee hired on or before November 1, 2008:

<u>Full-Time</u>

| | | |
|---|---|---|
| Effective | January 1, 2010 | $80.00 |
| Effective | January 1, 2011 | $90.00 |
| Effective | January 1, 2012 | $105.00 |
| Effective | January 1, 2013 | $120.00 |

(*Id.* at 3.)

The MOA also modified the arbitration procedures set forth in Article 22 of the 2004 CBA in the following way:

> For the purpose of arbitration pertaining to matters other than suspensions or terminations, the language shall read that the arbitrator shall be selected from the American Arbitration Association listing (no panel).

> For arbitrations regarding suspensions and terminations only, arbitrators shall be selected from a panel, and the panel will be made up of arbitrators that are currently in the industry practicing arbitration, and shall be selected as follows: . . .

> All of the above language shall be placed in the proper paragraphs under the current Grievance/Arbitration language in the 2003 to 2007 contract. No other language will change as a result of the above items.

(*Id.* at 5.)

Finally, the MOA incorporated by reference "the Agreements and Declarations of Trust establishing the Benefit Funds . . . set forth in this Agreement [(the Union Funds)] and all rules, regulations and procedures adopted by the Trustees of the Benefit Funds, as they may be amended or modified from time to time, *including but not limited to all provisions for the collection of contributions*." (*Id.* at 3.) A separate document entitled "UFCW Local 174 Affiliated Trust Funds and UFCW Local 342 Affiliated Trust Funds Procedures for Collection of Delinquent Contributions" ("Collection Procedures") sets forth, *inter alia*, yet another arbitration provision covering disputes over delinquent contributions to the Union Funds. (*See* Lauletti Aff. Ex. A, Collection Procedures, at 8–13.) That arbitration clause states that "[a]ll arbitrations initiated by the Funds shall be conducted in accordance with the Arbitration Procedures and Rules Governing Employer Delinquency and Audit Disputes established by the Funds' Trustees." (*Id.* at 8.)

The 2004 CBA, as extended by the MOA, expired on November 1, 2012, and is currently being renegotiated by Trade Fair and the Union. (Lauletti Aff. ¶ 22; Flanagan Aff. ¶¶ 3–4.) After expiration of the 2004 CBA, it appears that Trade Fair continued to make fringe benefit contributions to the Union Funds until April 2013. (Lauletti Aff. ¶ 9.) The Union Funds claim that Trade Fair has failed to make such contributions since then. (*Id.*) On October 9, 2013, the Union Funds sent Trade Fair a demand for arbitration over Trade Fair's alleged "failure and/or refusal to make proper and timely contributions to the [Union] Funds for September 2013 and October 2013 monthly billing." (Lauletti Aff. Ex. B.) This lawsuit followed.

## B. Procedural History

Trade Fair initially filed an Order to Show Cause and Petition to Stay Arbitration in the Supreme Court of New York, Nassau County on October 23, 2013. That same day, a New York judge signed the Order to Show Cause and temporarily stayed arbitration pending final resolution of Trade Fair's petitioner. Two days later, on October 25, 2013, the Union Funds removed the action to this Court. The Union Funds filed a motion to dismiss the complaint on December 4, 2013. Trade Fair opposed the motion on December 18, 2013, and the Union Funds replied on January 10, 2013. The Court heard oral argument on January 16, 2013. The Court has fully considered the submissions of the parties.

## II. STANDARD OF REVIEW

Although styled as a motion to dismiss, the Union Funds' motion also seeks an order compelling arbitration. (*See* Notice of Mot., ECF No. 6). Thus, "[f]or purposes of deciding the instant motion, the Court will do as a number of other courts have done and construe the Respondents' motion to dismiss as a motion to compel arbitration." *Jillian Mech. Corp. v. United Serv. Workers Union Local 355*, 882 F. Supp. 2d 358, 363 (E.D.N.Y. 2012); *see Wabtec Corp. v. Faiveley Transp. Malmo AB*, 525 F.3d 135, 139–40 (2d Cir. 2008) (motion to dismiss may be construed as motion to compel arbitration where movant requests district court to compel arbitration); *Krantz & Berman, LLP v. Dalal*, No. 09-CV-9339 (DLC), 2010 WL 1875695, at *3 (S.D.N.Y. May 11, 2010) ("Under certain circumstances a court may construe a motion to dismiss based on the existence of a mandatory arbitration provision as a motion to compel arbitration."), *aff'd*, 472 F. App'x 76 (2d Cir. 2012). Pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.*

("FAA"), the Court evaluates a motion to compel arbitration under a standard similar to the standard for a summary judgment motion made pursuant to Federal Rule of Civil Procedure 56. *See Bensadoun v. Jobe–Riat*, 316 F.3d 171, 175 (2d Cir. 2003) (citing *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 n.9 (3d Cir.1980)); *Hines v. Overstock.com, Inc.*, 380 F. App'x 22, 24 (2d Cir. 2010); *Jillian Mech. Corp.*, 882 F. Supp. 2d at 363; *Guida v. Home Sav. of Am., Inc.*, 793 F. Supp. 2d 611, 614 (E.D.N.Y. 2011). "If there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary." *Bensadoun*, 316 F.3d at 175 (citing 9 U.S.C. § 4).

The standard for summary judgment is well settled. Pursuant to Federal Rule of Civil Procedure 56(a), a court may grant a motion for summary judgment only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013). The moving party bears the burden of showing that he or she is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005); *see also Jillian Mech. Corp.*, 882 F. Supp. 2d at 364 ("On a motion to compel arbitration, the moving party has the initial burden of showing that an agreement to arbitrate exists."). The court "'is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments.'" *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996)); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (summary judgment is unwarranted if "the

evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*.'" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (alteration and emphasis in original) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." 477 U.S. at 249–50 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties alone will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247–48 (emphasis in original). Thus, the nonmoving party may not rest upon mere conclusory allegations or denials but must set forth "'concrete particulars'" showing that a trial is needed. *R.G. Grp., Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978)). Accordingly, it is insufficient for a party opposing summary judgment "'merely to assert a conclusion without supplying supporting arguments or facts.'" *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (quoting *Research Automation Corp.*, 585 F.2d at 33).

## III. DISCUSSION

"Whether or not a company is bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the court, and a party cannot be forced to 'arbitrate the arbitrability question.'" *Litton*, 501 U.S. 208–09 (quoting *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S.

643, 651 (1986)); *see, e.g.*, *Cleveland Wrecking Co. v. Iron Workers Local 40*, 136 F.3d 884, 888 (2d Cir. 1997). "Disputes about whether the parties are bound by the arbitration agreement, or if a particular controversy falls under the scope of an arbitration agreement, are both the type of gateway issues that go to arbitrability and which are for courts to decide." *Guida*, 793 F. Supp. 2d at 615 (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)). Section 3 of the FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. In deciding whether an action should be sent to arbitration, the Second Circuit has instructed a district court to conduct the following inquiry:

> [F]irst, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether

6

Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then decide whether to stay the balance of the proceedings pending arbitration.

*JLM Indus. v. Stolt-Nielsen SA*, 387 F.3d 163, 169 (2d Cir. 2004) (quoting *Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 75–76 (2d Cir. 1998)).

Here, it is undisputed that Trade Fair and the Union Funds agreed to arbitrate. However, they disagree about the scope of that agreement in two respects. First, they dispute *which* arbitration clause covers grievances over delinquent contributions to the Union Funds, although they appear to agree that at least one arbitration clause covers such grievances. Second, they dispute whether the Union Funds' underlying grievance over Trade Fair's allegedly delinquent contributions in 2013 falls outside the scope of the applicable arbitration clause because the 2004 CBA, as extended by the MOA, expired in 2012. The Court takes up each issue in turn.[1]

A. Scope of the Arbitration Clauses

Trade Fair and the Union Funds disagree about which arbitration clause in the 2004 CBA, as modified by the MOA, covers grievances over delinquent contributions to the Union Funds. The Union Funds contend that the October 23, 1999 letter setting forth separate procedures for arbitrations over contributions to the Union Funds applies. They also argue that the arbitration clause in their Collection Procedures applies to grievances over delinquent contributions. Trade Fair responds that the October 23, 1999 letter modified only the 1999 CBA, and that Article 22 of the 2004 CBA, as modified by the MOA, applies to disputes over delinquent contributions arising under the 2004 CBA. For the following reasons, the Court concludes that only the arbitration clause in the Union Funds' Collection Procedures applies to disputes over delinquent contributions to the Union Funds.

1. Legal Standard

The Second Circuit has repeatedly acknowledged that "federal policy strongly favors arbitration as an alternative dispute resolution process." *David L. Threlkeld & Co. v. Metallgesellschaft Ltd.*, 923 F.2d 245, 248 (2d Cir. 1991). In light of this federal policy, the Second Circuit encourages courts to "construe arbitration clauses as broadly as possible," and to "compel arbitration unless it

---

[1] As a threshold matter, contrary to Trade Fair's suggestion, the Union Funds' simultaneous pursuit of the September and October 2013 contributions before the National Labor Relations Board does not preclude the Union Funds from seeking to arbitrate the present, underlying dispute. *See Local 807, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am. v. Brink's, Inc.*, 744 F.2d 283, 286 (2d Cir. 1984) ("That the issues are before the NLRB does not preclude plaintiff from raising them concurrently in an arbitration proceeding."); *see also Emery Air Freight Corp. v. Local Union 295*, 786 F.2d 93, 100 (2d Cir. 1986) ("Nor is the pendency of the same issues before

the NLRB a basis for staying arbitration."); *Bogopa-Junction, Inc. v. Local 338 RWDSU*, No. 00-CV-3146 (GBD), 2000 WL 666336, at *3 (S.D.N.Y. May 22, 2000) (refusing to stay arbitration on basis that union commenced both arbitration and NLRB proceedings); *cf. United Aircraft Corp. v. Canel Lodge No. 700, Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO*, 314 F. Supp. 371, 376 (D. Conn.) ("The arbitration process will not preclude or otherwise limit the Union's right to simultaneously process its statutory grievance before the NLRB."), *aff'd*, 436 F.2d 1 (2d Cir. 1970).

may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Collins & Aikman Prods. Co. v. Bldg. Sys. Inc.*, 58 F.3d 16, 19 (2d Cir. 1995) (citation and internal quotation marks omitted). Indeed, "'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.'" *Stolt-Nielsen*, 387 F.3d at 171 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)); *see, e.g., Garten v. Kurth*, 265 F.3d 136, 142 (2d Cir. 2001).

In determining whether a dispute should go to the courts or to the arbitrator, the law has offered the following guidance. Where the underlying issue concerns "whether a dispute between the parties is covered by the arbitration agreement[, that] is for the courts to decide." *Prudential Lines, Inc. v. Exxon Corp.*, 704 F.2d 59, 63 (2d Cir. 1983); *see, e.g., Stolt-Nielsen*, 387 F.3d at 171 ("'[A] disagreement about whether an arbitration clause . . . applies to a particular type of controversy is for the court.'" (quoting *Howsam*, 537 U.S. at 84)). Relatedly, "[w]here the parties to an arbitration agreement specifically have excepted a certain type of claim from mandatory arbitration, it is the duty of federal courts to enforce such limitations." *Oldroyd*, 134 F.3d at 76. Where a contract contains a broad arbitration clause, however, courts generally hold that "a court should compel arbitration, and permit the arbitrator to decide whether the dispute falls within the [arbitration] clause." *Prudential Lines, Inc.*, 704 F.2d at 64. Indeed, where a broad arbitration clause is in play, a presumption of arbitrability attaches, and "'in the absence of any express provision excluding a particular grievance from arbitration, . . . only the most forceful

evidence of a purpose to exclude the claim from arbitration can prevail.'" *AT & T Techs., Inc.*, 475 U.S. at 650 (alteration in original) (quoting *Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–85 (1960)). When making its determination as to whether a case should proceed before the court or the arbitrator, "a court must be ever mindful of the strong national policy favoring arbitration of labor disputes." *Rochdale Vill., Inc. v. Public Serv. Emp. Union*, 605 F.2d 1290, 1294 (2d Cir. 1979).

The Court applies general principles of contract law to interpret the arbitration clauses at issue. *See, e.g., In re Arbitration Between Standard Tallow Corp. & Kil-Mgmt. A/S*, 901 F. Supp. 147, 149 (S.D.N.Y. 1995) (noting the "[i]nterpretation of an arbitration clause under the FAA is a question of federal law, and must be interpreted in accordance with the general federal law of contracts," and that the federal law of contracts "dovetails precisely with general principles of contract law" (quotation marks and citations omitted)). Under New York principles of contract interpretation, "the 'words and phrases [in a contract] should be given their plain meaning, and the contract should be construed so as to give full meaning and effect to all of its provisions.'" *Olin Corp. v. Am. Home Assurance Co.*, 704 F.3d 89, 99 (2d Cir. 2012) (alteration in original) (quoting *LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 206 (2d Cir. 2005)); *see Vt. Teddy Bear Co., Inc. v. 538 Madison Realty Co.*, 1 N.Y.3d 470, 475 (2004) ("When interpreting contracts, we have repeatedly applied the familiar and eminently sensible proposition of law that, when parties set down their agreement in a clear, complete document, their writing should be enforced according to its terms." (internal citations and alterations omitted)). "This sensible proposition of law . . . imparts stability to commercial transactions by safeguarding against

8

fraudulent claims, perjury, death of witnesses and infirmity of memory." *Wallace v. 600 Partners Co.*, 86 N.Y.2d 543, 548 (1995) (internal quotation marks and alternations omitted).

## 2. Application

As noted, the parties argue over which arbitration procedure applies to grievances over delinquent contributions. The Court proceeds by examining each arbitration provision that the parties have raised.

The Court turns first to the October 23, 1999 letter. The plain language of that letter belies the Union Funds' contention that the letter's arbitration provision covers disputes over all delinquent contributions to the Union Funds. The October 23, 1999 letter modifies only "Article 23 of the Collective Bargaining Agreement between [Trade Fair and the Union], dated October 23, 1999." (2004 CBA at 66.) Moreover, as noted, the 1999 CBA— including its arbitration provision at Article 23—was incorporated into the 2004 CBA only insofar as it continued to cover seven Trade Fair employees. (*See id.* at 27.) Thus, any disputes over contributions to the Union Funds arising out of the 2004 CBA, and not the 1999 CBA, fall outside the scope of the October 23, 1999 letter's arbitration clause.

Having disposed of the October 23, 1999 letter's applicability to disputes arising under the 2004 CBA, the Court turns to the other remaining arbitration provisions. Article 22 of the 2004 CBA states that it applies to disputes over "the interpretation, application, or enforcement of any of the provisions of this Agreement, *except differences that arise involving contributions to the [Union Funds]*." (*Id.* at 14 (emphasis added).) The plain language of this arbitration clause could not be clearer; despite Article 22's broad sweep, it does not cover grievances over delinquent contributions to the Union Funds.

*See Oldroyd*, 134 F.3d at 76 ("Where the parties to an arbitration agreement specifically have excepted a certain type of claim from mandatory arbitration, it is the duty of federal courts to enforce such limitations."). For this reason, as well, the Court rejects Trade Fair's argument that the MOA's amendments to Article 22 apply to grievances over delinquent contributions. The MOA's modifications to Article 22 relate only to the procedures for arbitrations covered by Article 22; the MOA does not enlarge the scope of Article 22 itself.

However, the Union Funds' Collection Procedures—incorporated into the 2004 CBA by reference in the MOA (*see* MOA at 3)—fill in the gap created by Article 22. As noted, the Collection Procedures provide a separate arbitration clause explicitly covering disputes over delinquent contributions. (*See* Collection Procedures at 8 ("If an Employer's delinquent contributions, all accrued interest and/or any other charges or amounts owed remain unpaid, or an Employer has failed to schedule an audit, seven (7) days after the date of the Demand Letter (as defined in Section II, Paragraph 5 of these Procedures), the claim may proceed to arbitration. . . . All arbitrations initiated by the Funds shall be conducted in accordance with the Arbitration Procedures and Rules Governing Employer Delinquency and Audit Disputes established by the Funds' Trustees.").) Thus, according to the plain language of the 2004 CBA, the MOA, and the Collection Procedures, grievances over delinquent contributions to the Union Funds fall squarely within the scope of the arbitration clause set forth in the Collection Procedures.

## B. Arbitration of Post-Expiration Grievances

Having determined that the arbitration provision in the Collection Procedures, as incorporated into the 2004 CBA by the

9

MOA, applies to grievances over contributions to the Union Funds, the Court must decide whether that arbitration agreement requires the parties to arbitrate the Union Funds' grievance over allegedly delinquent contributions in 2013, which occurred after the 2004 CBA expired. After all, as the Supreme Court has noted, "[t]he object of an arbitration clause is to implement a contract, not to transcend it." *Litton*, 501 U.S. at 205. To resolve this issue, the Court must decide whether Trade Fair's obligation to make contributions to the Union Funds ceased after the 2004 CBA expired in November 2012, or whether that contractual obligation continued past the 2004 CBA's expiration. *See id.* at 207–08 (explaining how contractual obligation falls within scope of arbitration clause even after contract's expiration). Under this standard, the Court concludes that the parties have a duty to arbitrate the underlying dispute because it is based upon a contractual right that survived the expiration of the remainder of the 2004 CBA.

### 1. Legal Standard

As an initial matter, the parties dispute the correct standard that this Court should employ in determining whether the arbitration clause in the Collection Procedures mandates arbitration of the underlying dispute over allegedly missed contributions in 2013. Specifically, the Union Funds contend that the Court should compel arbitration if the contribution provisions of the 2004 CBA and MOA *arguably* survive the CBA's expiration. By contrast, Trade Fair asserts that this Court should not compel arbitration absent clear, express language in the 2004 CBA indicating that the parties intended the Union Funds' right to fringe benefit contributions from Trade Fair to endure the expiration of the remainder of the 2004 CBA. For the following reasons, both sides miss the mark in certain respects.

"The duty to arbitrate 'is a creature of the collective-bargaining agreement [such] that a party cannot be compelled to arbitrate any matter in the absence of a contractual obligation to do so.'" *Newspaper Guild/CWA of Albany, TNG/CWA, AFL-CIO-CLC v. Hearst Corp.*, 645 F.3d 527, 530 (2d Cir. 2011) (quoting *Nolde Bros., Inc. v. Local No. 358, Bakery & Confectionery Workers Union, AFL-CIO*, 430 U.S. 243, 250–51 (1977)). "Adherence to these principles, however, does not require [a court] to hold that termination of a collective-bargaining agreement automatically extinguishes a party's duty to arbitrate grievances arising under the contract." *Nolde Bros.*, 430 U.S. at 251. Rather, in *Nolde Brothers*, the Supreme Court "identified a presumption that 'matters and disputes arising out of the relation governed by contract' are subject to arbitration even after the contract expires." *Newspaper Guild*, 645 F.3d at 530 (quoting *Litton*, 501 U.S. at 204). The Supreme Court "reiterated its support for the holding in [*Nolde Brothers*]" in *Litton* by recognizing that there exists "a presumption in favor of post-expiration arbitration of matters and disputes 'arising out of the relation governed by the contract.'" *CPR (USA) Inc. v. Spray*, 187 F.3d 245, 255 (2d Cir. 1999) (quoting *Litton*, 501 U.S. at 204). Specifically, the *Litton* decision defined what it means for a grievance to arise out of the contract as follows:

> A postexpiration grievance can be said to arise under the contract only where it involves facts and occurrences that arose before expiration, where an action taken after expiration infringes a right that accrued or vested under the agreement, or where, under normal principles of contract interpretation, the disputed

contractual right survives expiration of the remainder of the agreement.

501 U.S. at 205–06; *see, e.g.*, *Newspaper Guild*, 645 F.3d at 530.

The *Litton* decision also emphasized that this inquiry may require a court "to interpret a provision of a bargaining agreement." *Id.* at 209; *see CPR (USA) Inc.*, 187 F.3d at 255 ("The *Litton* Court specifically instructed lower courts faced with post-expiration disputes to determine whether parties had agreed to arbitrate these disputes—*i.e.*, to determine arbitrability—even if that analysis requires the court to interpret the arbitration agreement, a task normally remitted to an arbitrator under a broad arbitration clause."). "[A]s the Third Circuit astutely observed, the *Litton* Court 'took this prescription quite seriously, for, as Justice Marshall pointed out in his dissent, it was debatable whether the obligation at issue in *Litton* arose under the expired CBA or not.'" *Chi. Pneumatic Tool Co. v. Smith*, 890 F. Supp. 100, 114 n.22 (N.D.N.Y. 1995) (quoting *Luden's Inc. v. Local Union No. 6 of Bakery, Confectionery & Tobacco Workers' Int'l Union of Am.*, 28 F.3d 347, 354 n.9 (3d Cir. 1994)). Nonetheless, in *Litton*, the Supreme Court held that the contractual right at issue did not arise under the collective bargaining agreement before it. *See* 501 U.S. at 209–10. Thus, *Litton* stands in some tension with *Nolde Brothers*, which held "that courts are not to reach the merits of the dispute, but instead are to order arbitration if the lapsed CBA *arguably* creates the obligation at the center of the grievance." *Luden's*, 28 F.3d at 353 (emphasis in original); *see Nolde*, 501 U.S. at 249 ("Of course, in determining the arbitrability of the dispute, the merits of the underlying claim for severance pay are not before us."), 252 (duty to arbitrate endures expiration of collective bargaining agreement

when dispute is "over an obligation arguably created by the expired agreement").

Here, invoking *Nolde Brothers*, the Union Funds maintain that the Court should compel arbitration if the 2004 CBA *arguably* contemplates the extension of their right to fringe benefit contributions beyond the 2004 CBA's expiration. However, this standard of review—rooted in the principle that courts should not rule on the merits in deciding the arbitrability of a dispute—does not survive *Litton*'s clear command to courts to interpret a collective bargaining agreement to the extent necessary to determine if the disputed right actually arises under that agreement. *See, e.g.*, *Commc'n Workers of Am. v. Avaya, Inc.*, 693 F.3d 1295, 1300 (10th Cir. 2012) (recognizing that "the court's duty to determine whether the party intended the dispute to be arbitrable trumps its duty to avoid reaching the merits"); *Int'l Bhd. of Elec. Workers, AFL-CIO, Local 1 v. GKN Aerospace N. Am., Inc.*, 431 F.3d 624, 627–28 (8th Cir. 2005) (holding that, under *Litton*, "the judicial responsibility to determine arbitrability takes precedence over the general rule to avoid consideration of the merits of a grievance"); *Indep. Lift Truck Builders Union v. Hyster Co.*, 2 F.3d 233, 236 (7th Cir. 1993) (holding that, after *Litton*, "[i]f the court must, to decide the arbitrability issue, rule on the merits, so be it"). The Court finds support for this interpretation of *Litton* in the Second Circuit's recent *Newspaper Guild* decision. There, the Second Circuit applied *Litton* to determine if the "dues checkoff" provision of a collective bargaining agreement survived the expiration of the remainder of that agreement. Although the Second Circuit made clear that it "express[ed] no view on the merits of the [plaintiff's] dues-checkoff grievance," *id.* at 533 n.1 (citing *Nolde Bros.*, 430 U.S. at 249), the Second Circuit interpreted the dues checkoff provision of the collective bargaining agreement and concluded that,

"'under normal principles of contract interpretation,' . . . the [plaintiff's] right to checkoff of union dues survives expiration of the CBA," *id.* at 531 (quoting *Litton*, 501 U.S. at 206). Significantly, the Second Circuit did not consider whether the dispute was "over an obligation arguably created by the expired agreement." *Nolde Bros.*, 430 U.S. at 252. In this respect, the Second Circuit's approach stands in contrast to the District Court's decision that the Second Circuit reviewed, which had held, under *Nolde Brothers*, that "the CBA *arguably* contemplates extension of Hearst's dues checkoff obligations beyond expiration of the CBA." *Newspaper Guild/CWA of Albany, TNG/CWA, AFL-CIO-CLC v. Hearst Corp.*, No. 09-CV-764 (GLS/DRH), 2010 WL 2425909, at *4 (N.D.N.Y. June 11, 2010) (emphasis added).

Relatedly, the Union Funds rely on *Abram Landau Real Estate v. Bevona*, 123 F.3d 69 (2d Cir. 1997), and its progeny to argue that any ambiguity in the 2004 CBA is for an arbitrator to decide. (Resp't's Reply Mem. 6–8.) Their reliance on these cases is misplaced. *Abram Landau* concerned a so-called "evergreen clause" in a collective bargaining agreement, which provided that the collective bargaining agreement would continue in full force following the collective bargaining agreement's termination date until a successor collective bargaining agreement was executed. *Id.* at 71. The parties disputed whether the evergreen clause prolonged the agreement, and disagreed on whether their dispute over the meaning of the evergreen clause was subject to arbitration under the agreement's arbitration clause. *Id.* at 71, 74. The Second Circuit held:

> In determining whether an arbitrator or a court gets to interpret a termination clause or "evergreen clause," the dispositive question is whether the parties have agreed that an arbitrator should decide that question. Where the agreement contains a sweeping arbitration clause covering all disputes involving the meaning of terms and provisions of the agreement and where the arbitration clause does not expressly exclude disputes over the termination provision or the "evergreen" clause, disputes over these matters should be submitted to arbitration.

*Id.* at 73. Thus, *Abram Landau* held that the issue of *whether an agreement expired or not* is arbitrable to the extent the agreement contains a broad arbitration clause. *See, e.g.*, *CPR (USA) Inc.*, 187 F.3d at 256 (holding, under *Abram Landau*, that it is for an arbitrator to decide whether agreement expired).

Following *Abram Landau*, other courts in this Circuit have held that, "[i]f the arbitration clause is broad, the question of whether the CBA has been terminated will be for the arbitrator to decide if there is 'at least a colorable claim under the contract that the contract has not terminated.'" *Tile Setters & Tile Finishers Union of N.Y. & N.J. v. Speedwell Design/BFK Enter., LLC*, No. 06-CV-5211 (KAM), 2009 WL 922021, at *8 (E.D.N.Y. Mar. 31, 2009) (quoting *Ottley v. Sheepshead Nursing Home*, 688 F.2d 883, 886 (2d Cir. 1982)). However, other courts have recognized that the *Abram Landau* line of cases, which address the arbitrability of a dispute over whether an agreement expired, are distinct from *Litton* and its progeny, which concern the arbitrability of post-expiration grievances. *See 4200 Ave. K LLC v. Fishman*, 164 F. Supp. 2d 339, 343 (S.D.N.Y. 2001) ("*Litton* is inapplicable

here, where the question at issue is whether the agreement expired, not whether a post-expiration grievance is arbitrable."); *Duane St. Assocs. v. Local 32B-32J*, No. 00-CV-3861 (SHS), 2000 WL 802889, at *2 (S.D.N.Y. 2000) (distinguishing *Litton* from *Abram Landau*, and noting that "the question at issue here is whether the agreement has expired, not whether a post-expiration grievance is arbitrable"). Indeed, it is telling that *Abram Landau* does not reference *Litton* once, and conversely, *Newspaper Guild*—a *Litton* case—does not reference *Abram Landau*, even though *Newspaper Guild* addressed an agreement with a broad arbitration clause. *See Newspaper Guild*, 645 F.3d at 528 (quoting language from broad arbitration agreement). Accordingly, because the parties do not dispute the fact that the 2004 CBA did expire in 2012, the Court does not rely on the *Abram Landau* line of cases in deciding whether the underlying dispute here is subject to arbitration.

Instead, following the Second Circuit's lead in *Newspaper Guild*, this Court applies *Litton* and its progeny to determine whether the underlying grievance arises under the 2004 CBA. The Court endeavors to avoid passing on the merits of the underlying grievance "unless it is impossible to determine the arbitrability of [the] dispute without analysis of the terms of the collective bargaining agreement." *Jillian Mech. Corp.*, 882 F. Supp. 2d at 367. To determine if the underlying grievance arises under the CBA, the Court considers whether it (1) involves facts and occurrences that arose before the 2004 CBA's expiration, (2) concerns an action taken after the 2004 CBA's expiration that infringes a right that accrued or vested under the 2004 CBA, or (3) involves a contractual right that, "under normal principles of contract interpretation," survives expiration of the remainder of the 2004 CBA. *Litton*, 501 U.S. at 205–06.

## 2. Application

Although the Court rejects the Union Funds' proposed standard of review, the Court agrees with the Union Funds that, under normal principles of contract interpretation, the contribution provisions in the MOA survive expiration of the 2004 CBA.[2]

As noted *supra*, under New York law,[3] a contract must be interpreted according to the

---

[2] At oral argument, counsel for Trade Fair observed that the Union has withdrawn demands for arbitration on three separate occasions after the 2004 CBA expired. (*See* Pearl Aff. ¶¶ 8–10.) Counsel for Trade Fair suggested that the Union had done so because the Union understands that disputes arising after the 2004 CBA expired are not arbitrable, and that the Union's position should bind the Union Funds. However, "[a]rguments raised for the first time at oral argument are generally deemed waived." *Bd. of Managers of Mason Fisk Condo. v. 72 Berry St., LLC*, 801 F. Supp. 2d 30, 39 (E.D.N.Y. 2011) (quoting *Tamar v. Mind C.T.I., Ltd.*, 723 F. Supp. 2d 546, 555 (S.D.N.Y. 2010)). In any event, the underlying grievances at issue in the Union's arbitration demands differ from the underlying grievances at issue here. (*See* Pearl Aff. ¶¶ 8 ("The Union alleged multiple violations of the collective bargaining agreement including but not limited to Violation of Hiring Hall.") (internal citations omitted).) More fundamentally, Trade Fair points to no legal authority suggesting that the legal position of *the Union* binds *the Union Funds* to the same position.

[3] As a technical matter, in construing the 2004 CBA and MOA, the Court applies federal common law principles of contract interpretation. *See Litton*, 501 U.S. at 202–03 ("Section 301 of the Labor Management Relations Act, 1947 (LMRA), 29 U.S.C. § 185, 'authorizes federal courts to fashion a body of federal law for the enforcement of . . . collective bargaining agreements.'" (quoting *Textile Workers v. Lincoln Mills of Ala.*, 353 U.S. 448, 451 (1957)) (emphasis omitted)). "However, state law, 'if compatible with the purpose of § 301, may be resorted to in order to find the rule that will best effectuate the federal policy.'" *Lerner v. Amalgamated Clothing & Textile Workers Union*, 938 F.2d 2, 5 (2d Cir. 1991)

plain meaning of its words and phrases. *See, e.g.*, *Olin Corp.*, 704 F.3d at 99. Here, the plain language of the MOA evinces an intent to have the Union Funds' contractual right to fringe benefit contributions survive the expiration of the remainder of the 2004 CBA. Specifically, even though the MOA stated that the 2004 CBA would expire on November 1, 2012, it explicitly provided that Trade Fair's monthly contributions to all Union Funds except the Health Care Fund were to increase as of January 1, 2013. (*See* MOA at 3–4.) As for the Health Care Fund, the last scheduled contribution increase occurred on November 1, 2011. (*See id.* at 2–3.) In light of Trade Fair's contractual obligation to make contributions to all other Union Funds in 2013, the Court discerns an intent that Trade Fair's obligation to contribute to *all* Union Funds—including the Health Care Fund—would endure, at least through 2013. The Court rejects a piecemeal interpretation of these related provisions that would extinguish the Union Funds' contractual right to certain contributions in 2012 while recognizing that their right to all other contributions continues into 2013. *See, e.g.*, *Adams v. Suozzi*, 433 F.3d 220, 228 (2d Cir. 2005) ("'A written contract will be read as a whole, and every part will be interpreted with reference to the whole; and if possible it will be so interpreted as to give effect to its general purpose.'" (quoting *Westmoreland Coal Co. v. Entech, Inc.*, 100 N.Y.2d 352, 358 (2003))). In other words, the fact that the parties provided for Trade Fair's contributions to increase in certain cases demonstrates that they intended for the Union Funds' contractual right to fringe benefit contributions to survive expiration of the remainder of the 2004 CBA.

Although Trade Fair contends that references to 2013 were a mere typographical error, it offers no support for this argument other than the fact that the 2004 CBA otherwise expired in November 1, 2012. However, under *Litton*, the fact that the 2004 CBA expired on November 1, 2012 says nothing about whether specific provisions were meant to survive its expiration. *See Litton*, 501 U.S. at 205–06 (recognizing that a contractual right can survive the expiration of the remainder of a collective bargaining agreement). Moreover, the contribution provisions need not explicitly state their intention to survive the expiration of the 2004 CBA; *Litton* itself contemplated implicit agreements, as well. *See id.* at 206 (holding that duty to arbitrate "may arise as well from the express or implied terms of the expired agreement itself"); *Local Union 813, Int'l Bhd. of Teamsters v. Waste Mgmt. of N.Y., LLC*, 469 F. Supp. 2d 80, 85 (E.D.N.Y. 2007) ("[Defendant] contends that *Litton* requires express language indicating the continuation of terms from the expired contracts. That reading of *Litton* is overbroad."); *see also Newspaper Guild*, 645 F.3d at 530–31 (holding that contractual right survived expiration of CBA, even though provision at issue did not explicitly state that it survived CBA).

Accordingly, because the Union Funds' right to fringe benefit contributions from Trade Fair arises under the 2004 CBA under normal principles of contract interpretation,[4] the Court concludes that the dispute over

---

(quoting *Lincoln Mills*, 353 U.S. at 457). "Accordingly, New York law guides the analysis in this case." *Mason Tenders Dist. Council Welfare Fund v. Thomsen Const. Co.*, 301 F.3d 50, 53 (2d Cir. 2002).
[4] Because the Court concludes that the Union Funds' right to fringe benefit contributions from Trade Fair arises under the 2004 CBA under normal principles of

contract interpretation, the Court need not address the Union Funds' related argument, made only in passing, that this right is accrued or vested under the 2004 CBA before expiration.

delinquent contributions is arbitrable.[5] *See, e.g.*, *Newspaper Guild*, 645 F.3d at 533.

### C. Staying the Litigation

The remaining issue is whether the litigation should be stayed or dismissed pending arbitration. Here, the Union Funds ask this Court to dismiss this action and to compel arbitration; however, they do not request a stay of this litigation. Nonetheless, in the case at bar, the Court concludes that a stay is more appropriate than dismissal.

"The FAA provides that, where the asserted claims are 'referable to arbitration,' the court shall 'stay the trial of the action until such arbitration has been had.'" *Dixon v. NBCUniversal Media, LLC*, 947 F. Supp. 2d 390, 405 (S.D.N.Y. 2013) (quoting 9 U.S.C. § 3). The district court may exercise its discretion to stay the proceeding or may conclude that the litigation should be dismissed. *See Salim Oleochemicals v. M/V Shropshire*, 278 F.3d 90, 92–93 (2d Cir. 2002). A decision to dismiss has implications for the speed with which the arbitration of the dispute may begin because a dismissal is reviewable by an appellate court under Section 16(a)(3) of the FAA; a stay, however, is an unappealable interlocutory order under Section 16(b) of the FAA. *Id.* at 93. Staying the action is, therefore, more likely to allow the matter to proceed to arbitration in an expeditious manner. *Id.* The Second Circuit urges courts deciding whether to dismiss or stay litigation when referring a matter to arbitration to "be mindful of this liberal federal policy favoring arbitration agreements" and consider that "[u]nnecessary delay of the arbitral process through appellate review is disfavored." *Id.* (citation and quotation marks omitted).

In its discretion, the Court concludes that a stay is more appropriate in this case. This Court recognizes that some courts have held that where "none of plaintiff's claims remains to be resolved by this court, . . . there is no reason to stay—rather than dismiss— this action." *Mahant v. Lehman Bros.*, No. 99-CV-4421(MBM), 2000 WL 1738399, at *3 (S.D.N.Y. Nov. 22, 2000); *see also Mazza Consulting Grp., Inc. v. Canam Steel Corp.*, No. 08-CV-38 (NGG), 2008 WL 1809313, at *7 (E.D.N.Y. Apr. 21, 2008); *Perry v. N.Y. Law Sch.*, No. 03 Civ. 9221(GBH), 2004 WL 1698622, at *4 (S.D.N.Y. July 28, 2004). However, in light of the Second Circuit's admonition that "[u]nnecessary delay of the arbitral process through appellate review is disfavored," *Salim Oleochemicals*, 278 F.3d at 93, many other courts have "chosen to stay proceedings, even where urged to dismiss." *Dixon*, 947 F. Supp. 2d at 405 (citing *Duraku v. Tishman Speyer Props., Inc.*, 714 F. Supp. 2d 470, 475 (S.D.N.Y. 2010); *Douce v. Origin ID TMAA 1404-236-5547*, No. 08-CV-483 (DLC), 2009 WL 382708, at *5 (S.D.N.Y. Feb. 17, 2009)). Here, although the Union Funds request dismissal, the Court "believes that the more appropriate action is to stay the proceedings and to compel arbitration in order to promote expeditious resolution of this dispute." *Pick Quick Food,*

---

[5] The Court is not persuaded by the Union Funds' additional argument that their Declarations of Trust and Collection Procedures authorize the Union Funds to enforce their right to contributions from Trade Fair by arbitration simply because those agreements, unlike the 2004 CBA, have not expired. As Trade Fair notes, the Declarations of Trust and Collection Procedures bind Trade Fair only insofar as they are incorporated into the 2004 CBA. Significantly, the Union Funds do not argue that the Declarations of Trust or Collection Procedures contain any provision indicating that they were meant to outlast the CBA's expiration. *Cf. Trs. of N.Y. State Nurses Ass'n Pension Plan v. Cabrini Med. Ctr.*, 353 F. App'x 528, 531 (2d Cir. 2009) (confirming arbitration award, where union pension plan's trust agreement included a "Continuation Policy" requiring employer to make contributions to pension plan even after expiration of collective bargaining agreement).

*Inc. v. United Food & Commercial Workers Local 342*, 952 F. Supp. 2d 494, 506 (E.D.N.Y. 2013); *accord Halim v. Great Gatsby's Auction Gallery*, 516 F.3d 557, 561 (7th Cir. 2008) ("[T]he proper course of action when a party seeks to invoke an arbitration clause is to stay the proceedings rather than to dismiss outright." (citation and internal quotation marks omitted)).

## IV. CONCLUSION

For the reasons set forth herein, the Court grants respondents' motion to compel arbitration, grants respondents' motion to vacate the temporary stay of arbitration ordered by the New York State Supreme Court, and stays this action. Accordingly, the parties are ordered to proceed to the arbitration process set forth in the Union Funds' Collection Procedures, which are binding on Trade Fair through the 2004 CBA, as modified by the MOA.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: February 24, 2014
        Central Islip, NY


* * *

Petitioners are represented by Alan B. Pearl, Alan B. Pearl & Associates, P.C., 6800 Jericho Turnpike, Suite 218E, Syosset, NY 11791. Respondents are represented by John H. Byington, III, Archer, Byington, Glennon & Levine, LLP, One Huntington Quadrangle, Suite 4C10, P.O. Box 9064, Melville, NY 11747.